# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00781-CR

**Ryan West, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. 0985966, HONORABLE FRED A. MOORE, JUDGE PRESIDING

A jury found appellant Ryan West guilty of aggravated sexual assault of a child (for which it assessed punishment at imprisonment for thirty years), indecency with a child by contact (for which it assessed punishment at imprisonment for ten years), and indecency with a child by exposure (for which it assessed punishment at imprisonment for five years). *See* Tex. Pen. Code Ann. '' 21.11, 22.021 (West Supp. 2002). Appellant contends the complaining witness was not competent to testify. He also urges that the district court erroneously overruled defense challenges to prospective jurors and displayed a bias against the defense. We will overrule these contentions and affirm the convictions.

Appellant lived next door to the complainant and his family for several years ending in 1997. The complainant testified that during those years, appellant repeatedly touched the complainant=s penis, placed the complainant=s penis in his mouth, and placed his penis in the complainant=s mouth, among other

sexually abusive acts. This conduct took place in the complainant≈s home, in appellant≈s home, and in appellant≈s pickup truck. The complainant made his first outcry in 1998.

*Competence*

The complaining witness was a fifteen-year-old tenth grader at the time of trial in 2000. The complainant had sustained severe brain injuries in an automobile accident when he was six years old, leaving him neurologically impaired. There was testimony that the complainant≈s Afull-scale@IQ was 60 and that he functioned educationally at a second or third grade level. Appellant contends the complainant≈s mental impairment rendered him incompetent to testify.

With certain exceptions, every person is competent to be a witness. Tex. R. Evid. 601(a). One exception is a child or other person who, after being examined by the court, appears not to possess sufficient intellect to relate transactions with respect to which he is interrogated. *Id*. rule 601(a)(2). If a person afflicted with a physical or mental disability possesses sufficient intelligence to receive correct impressions of events he sees, retains a clear recollection of them, and is able to communicate them through some means, there is no reason for rejecting his testimony. *Watson v. State*, 596 S.W.2d 867, 870-71 (Tex. Crim. App. 1980). The issue of competence is a question for the trial court, and its ruling will not be disturbed on appeal unless an abuse of discretion is shown. *Reyna v. State*, 797 S.W.2d 189, 191 (Tex. App.CCorpus Christi 1990, no pet.). We review the entire record, not just the preliminary competency examination. *Id*.

Appellant relies primarily on the testimony of Dr. Jack Gaskill, a neuropsychologist specializing in the treatment of persons with neurological disorders, including traumatic brain injuries. Based

on a review of the complainant=s medical records, Gaskill opined that the complainant Ahas the ability to differentiate in the here and now from right and wrong,@ but that his Aneurocognitive deficits are so severe and so pronounced that he would not be able to accurately recall historical information without confabulating that historical information.@ Gaskill explained that confabulation is a distortion of memory in which persons Aremember pieces of the story, but then also throw in other pieces of information that were not in the original story.@ Such a person would believe that what he is recounting Ais accurate, but it=s oftentimes inconsistent with history.@ Gaskill stated that in his opinion, the complainant=s Aseverely impaired comprehension, judgment, insight, [and] reasoning@ rendered him unable to provide Areliable and accurate testimony here in the courtroom today.@ Gaskill gave this testimony at the competency hearing, and he later testified to the same effect before the jury as a defense witness.

The only other witness at the competency hearing was the complainant. He readily and appropriately answered the court=s questions and showed a clear understanding of the importance of telling the truth. During his trial testimony, the complainant gave clear, concise answers to the lawyers= questions and displayed no memory lapses or difficulties. Most significantly, the complainant was able to accurately relate the circumstances surrounding other acts of sexual abuse he suffered at the hands of a juvenile during the same general time period that appellant was abusing him.[1] Moreover, he showed no tendency to

_____

[1] The complainant made his outcry against the juvenile approximately twelve months before his outcry against appellant. The juvenile subsequently pleaded guilty and was in the custody of the Texas Youth Commission at the time of appellant=s trial. The juvenile was called by the State and

confuse the specific circumstances surrounding the juvenile=s conduct with the circumstances of appellant=s conduct.

Another neuropsychologist, Dr. William Holden, testified during the State=s case-in-chief. Holden had evaluated the complainant at the request of the Social Security Administration. Holden had not assessed the boy=s memory, but acknowledged that persons who suffer significant brain injuries sometimes have memory difficulties. Holden agreed when asked if such persons are more likely to remember traumatic events: AYeah, they=re more likely to remember things that are very personally relevant and salient for them than things that are a little bit more abstract and a little less personally salient for them.@

Several teachers and counselors at the complainant=s school also testified for the State. They were uniformly of the opinion that he was truthful. A school psychologist who had worked with the complainant for one year testified that he Ahad a really good memory, especially for long-term facts. For example, he would B he has remembered his other licensed specialists and school psychologists that have worked with him over the years. He remembers them from elementary school. He has a good memory.@

Appellant points to no evidence that the complainant=s accusations against him were the product of confabulation or confusion. To the contrary, the record reflects that the complainant was able to accurately recall the details of past events. Under the circumstances shown, the effect of the complainant=s brain injuries went less to the issue of his competence to testify and more to the question of the credibility of his testimony. The jury heard the testimony of the various experts and was able to take their views into

described his abuse of the complainant for the jury. His testimony was consistent with the complainant=s testimony.

consideration when deciding the weight to give the complainant=s testimony. Considering the record as a whole, we find no abuse of discretion in the court=s conclusion that the complainant was a competent witness. We overrule point of error seven.

We also overrule point of error eight. In it, appellant argues that because the complainant was incompetent, the court should not have allowed other witnesses to testify about things he told them. We rejected the premise of this argument in overruling point of error seven. Further, this contention was not preserved by trial objection. *See* Tex. R. App. P. 33.1(a).

*Jury Selection*

Appellant contends the court erred by denying his challenges for cause of potential jurors Zohn and Maseranc, who he claims were unwilling to consider the full range of punishment, including probation. *See* Tex. Code Crim. Proc. Ann. art. 35.16(c)(2) (West Supp. 2002) (bias against law upon which defense is entitled to rely). We review the court=s ruling for an abuse of discretion. *Fierro v. State*, 969 S.W.2d 51, 57 (Tex. App.CAustin 1998, no pet.).

Early in the voir dire process, the prosecutor displayed charts showing various ways in which the offense of aggravated sexual abuse of a child may be committed, including penetration of the child=s mouth and anus by the actor=s penis. Later, during defense counsel=s questioning, the panelists were asked if they could consider recommending probation for a person convicted of sexually assaulting a child. Zohn responded, AIt really would depend on the facts, but probably not.@ Shortly thereafter, the court told the jurors, AWe=re not asking what you=re going to do in this case, but we want to know if you can conceive of a case wherein you could consider probation.@ The court then offered a hypothetical example in which a

**5**

seventeen-year-old boy has consensual sexual intercourse with his thirteen-year-old girlfriend, explaining that this would be, under the law, an aggravated sexual assault. Thereafter, Maseranc said, A[T]he description [of the offense] on those poster boards, it would be difficult for me to consider probation. And as the Judge explained it in a totally different scenario, at the other end of the spectrum, I would be able to consider it.@

Zohn was later questioned individually at the bench. She told the court, AI answered that question [regarding the possibility of probation] before you came in and gave all the qualifications and further explained it. After you explained it that way, I would say, yes, I could [consider probation].@ Defense counsel then asked her if she could consider probation if the facts of the case involved anal penetration or other circumstances reflected in the prosecutor=s charts. She answered, AI would have to say yes.@

Maseranc was also questioned individually. She indicated that it would be difficult for her to recommend probation Abased on those boards [the prosecutor=s charts]@ but that she could consider probation in the case of the court=s hypothetical. The court reminded her that Ayou don=t know anything about the case . . . . And all we can say is, we=re dealing in a case that=s an aggravated sexual assault . . . . [T]here=s a possibility that you could have found penetration of a person younger than 14 in the anus, in the mouth.@ The court asked, AIs it a foregone issue, or is it a possibility that you could consider the full range of punishment, which includes probation, all the way up to life imprisonment?@ Maseranc answered, AIt=s a possibility that I could consider the full range of punishment, yes.@ The court then asked, ASo there is a set

**6**

of facts wherein you could consider and grant probation, in a case of this nature?@ She replied, AAs I said, in answer to some questions, I suppose anything=s possible.@

Both the defendant and the State have a right to a jury that is willing to consider the full range of punishment. *Johnson v. State*, 982 S.W.2d 403, 405 (Tex. Crim. App. 1998). A[P]rospective jurors must be able to accept that, for the offense in question, the minimum legal punishment will be appropriate in some circumstances and the maximum legal punishment will be appropriate in some circumstances. In other words, prospective jurors must be able to keep an open mind with respect to punishment until they hear the evidence in the case being tried.@ *Id*. at 406. This does not mean, however, that a juror must be willing to consider the entire range of punishment not just for the crime itself, but for the crime as the defendant committed it. *Sadler v. State*, 977 S.W.2d 140, 143 (Tex. Crim. App. 1998). A prospective juror cannot be properly challenged for cause simply because she will use the facts of the particular case to fit the punishment to the crime. *Id*.

Appellant argues that Zohn and Maseranc were willing to consider probation in only a narrow category of cases, such as consensual sex between teenagers. But a fairer reading of their statements is that they could conceive of facts and circumstances in which they would be able to consider probation for a defendant convicted of sexually assaulting a child, and of other factual circumstances in which they would be unable to do so. Neither foreclosed the possibility of probation before hearing the evidence in the case. This is all the law requires. *Johnson*, 982 S.W.2d at 405-06. No abuse of discretion is shown in the denial of appellant=s challenges for cause. Points of error one and two are overruled.

*Judicial Bias*

Appellant contends the trial judge Amade derogatory and unfair remarks@ to defense counsel, became Ainappropriately involved@ in the presentation of the defense case, and Aactively interfered@ with counsel=s questioning of witnesses. He argues that the judge=s conduct violated the presumption of innocence, denied him his due process right to an impartial judge, and infringed on his right to effective assistance of counsel. Appellant asserts that, collectively, the court=s actions denied him his fundamental right to a fair trial.

Appellant points to several incidents during his cross-examination of the complainant=s mother. Defense counsel sought to question the witness about allegations she had physically abused the complainant and that she was consistently late for his rehabilitation appointments. The judge overruled the State=s objections to this line of questioning, but admonished defense counsel to ask the questions Ain a more polite manner@ and to not Averbally harass the lady.@ At one point, the judge interrupted and instructed counsel how to properly phrase a question. Appellant also points to an exchange at the bench, outside the hearing of the jury, in which the judge told counsel that he Amisrepresent[ed] a lot of things@ in his questions. Finally, appellant complains of an incident during counsel=s questioning of a defense witness in which the trial judge, again outside the jury=s hearing, suggested to counsel how he should phrase a question.

Appellant relies on the opinion in *Blue v. State*, 41 S.W.3d 129 (Tex. Crim. App. 2000). In that case, the trial judge told the jury panel as voir dire began that the defendant had seriously considered entering into a plea bargain, and that he, the judge, would have preferred that the defendant plead guilty rather than go to trial. *Id*. at 130. A plurality of the court of criminal appeals held that the judge=s

**8**

comments tainted the defendant=s presumption of innocence and were fundamental, constitutional error for which no objection was required. *Id*. at 132.

The remarks of the district judge in the instant cause were not in the same category as those of the judge in *Blue*. Rather, this cause is more closely analogous to *Jasper v. State*, 61 S.W.3d 413 (Tex. Crim. App. 2001). There, the trial judge interrupted defense counsel and admonished him before the jury. *Id*. at 420-21. The court wrote, AIt is not improper for a trial judge to interject in order to correct a misstatement or misrepresentation . . . . Further, a trial judge=s irritation at the defense attorney does not translate to an indication as to the judge=s views about the defendant=s guilt or innocence.@ *Id*. at 421.

The district judge=s comments to counsel outside the jury=s hearing could not have had a negative effect on the presumption of innocence. The judge=s admonition to question the witness more politely and not to harass her was not calculated to convey the judge=s opinion of appellant=s guilt. Appellant does not point to any ruling or comment by the judge that prevented defense counsel from pursuing a desired line of questioning. The record does not support appellant=s contention that he was deprived of the presumption of innocence or the effective assistance of counsel. The judge=s comments did not deny appellant a fair trial. Points of error three, four, five, and six are overruled.

There is a separate written judgment of conviction for each count. The judgments are affirmed.

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed:   May 2, 2002

Do Not Publish