

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-17-00108-CR

_____

RANDAL WRIGHT, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 202nd District Court
Bowie County, Texas
Trial Court No. 15F0792-202

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

A Bowie County jury convicted Randal Wright of aggravated sexual assault of a child under fourteen years of age. On the jury's verdict, the trial court imposed a life sentence and ordered Wright to pay a $10,000.00 fine. On appeal, Wright argues that the trial court (1) erred in allowing the admission of extraneous-offense testimony during guilt/innocence, (2) erred in qualifying a child witness in front of the jury, and (3) erred in allowing the State to lead its witnesses.

We conclude that Wright waived his first point of error, that the trial court did not err in qualifying the child witness before the jury, and that neither abuse of discretion nor harm has been shown from the trial court's decision to overrule Wright's objections that the State was leading its witnesses. Consequently, we affirm the trial court's judgment.

## I. Wright Waived His First Point of Error

The evidence at trial demonstrated that the child was taken for examination by a Sexual Assault Nurse Examiner (SANE). Swabs from various places on the child's body were collected, and analysis of the specimen from the child's breast revealed the presence of a mixed DNA profile. Additional analysis resulted in the conclusion that Wright could not be excluded as a possible contributor to the DNA profile. Prior to trial, Wright was informed of the State's intent to use this evidence.

In response, Wright filed a motion in limine regarding the "existence of DNA evidence . . . found on or near the breasts of [the child]." In arguing the motion at a pretrial hearing, Wright initially stated simply that he wished for the State to approach the bench before mentioning the

items contained in the motion in limine. However, after the State argued that the DNA evidence should be admissible, Wright claimed that it constituted evidence of an extraneous offense because the State's indictment had only charged Wright with penetration of the child's sexual organ. The trial court then stated, "I'm inclined -- I hate to use the word 'inclined.' I'm going to allow the DNA evidence to come in, okay? . . . . In other words, I'm overruling your motion in limine . . . ." Wright asked for, but was denied, a running objection. The trial court specifically instructed Wright, "Remind me, and just object." The same issue was again raised on the day of trial, just before opening statements. In response to a request for clarification of its prior ruling, the trial court said, first, that it would allow the DNA evidence and, second, that it was (again) denying the motion in limine.

On appeal, Wright argues that the trial court erred in allowing the State to present the DNA evidence. Citing the rule that a trial court's grant or denial of a motion in limine normally does not preserve error, the State argues that Wright failed to preserve his first point of error on appeal. *See Harnett v. State*, 38 S.W.3d 650, 655 (Tex. App.—Austin 2000, pet. ref'd). We disagree. The record establishes that Wright argued that the DNA evidence should be excluded and that the trial court made an evidentiary ruling allowing the evidence to be admitted. Thus, as explained in *Geuder v. State*, 115 S.W.3d 11, 15 (Tex. Crim. App. 2003), although the matter was discussed during a hearing on Wright's motion in limine, the issue of admissibility of the evidence was preserved under Rule 103(b) of the Texas Rules of Evidence. *See* TEX. R. EVID. 103(b).

Yet, earlier-preserved error can be waived. *Stairhime v. State*, 463 S.W.3d 902, 906 (Tex. Crim. App. 2015) (citing *Thomas v. State*, 408 S.W.3d 887, 885 (Tex. Crim. App. 2013)). Here,

Wright did not object to testimony regarding the DNA testing results and affirmatively told the trial court that he had "[n]o objections" to the DNA report establishing that Wright could not be excluded as a contributor to the DNA profile found on the child's breasts.[1]

The question of whether "'a later statement of 'no objection' will forfeit earlier-preserved error is context-dependent.'" *Stairhime*, 463 S.W.3d at 906 (quoting *Thomas*, 408 S.W.3d at 885). *Stairhime* explained,

> If the record as a whole plainly demonstrates that the defendant did not intend, nor did the trial court construe, his "no objection" statement to constitute an abandonment of a claim of error that he had earlier preserved for appeal, then the appellate court should not regard the claim as "waived," but should resolve it on the merits. On the other hand, if from the record as a whole the appellate court simply cannot tell whether an abandonment was intended or understood, then, consistent with prior case law, it should regard the "no objection" statement to be a waiver of the earlier-preserved error. Under the latter circumstances, the affirmative "no objection" statement will, by itself, serve as an unequivocal indication that a waiver was both intended and understood.

*Id.* (quoting *Thomas*, 408 S.W.3d at 885). Ambiguities are resolved "in favor of finding a waiver." *Id.*

Nothing in the record plainly demonstrates that Wright did not intend, or that the trial court did not construe, his "no objection" statement to constitute an abandonment of a claim of error. "Our case law makes it clear that a statement of 'no objection' when the complained-of evidence is eventually proffered at trial—at least, without more—will signal to the trial court an unambiguous intent to abandon the claim of error that was earlier preserved for appeal." *Thomas*

---

[1] In addition, before the DNA evidence was introduced, Wright also told the trial court he had no objections to the introduction of the SANE report, which documented the child's statement that the defendant had "sucked" on the child's breasts.

4

*v. State*, 408 S.W.3d 887, 884 (Tex. Crim. App. 2013). Under these circumstances, Wright's "[n]o objection" statement, "by itself, serve[s] as an unequivocal indication that a waiver was both intended and understood." *Id.* at 886–87.

We overrule Wright's first point of error because it was waived.

## II.     The Trial Court Did Not Err in Qualifying the Child Witness in Front of the Jury

In his second point, Wright argues that the trial court commented on the weight of the evidence when qualifying the child's ability to testify truthfully in front of the jury. We find no error in the trial court's decision to qualify the witness in front of the jury and further conclude that the trial court made no comment on the weight of the evidence.

At trial, Wright objected to the child victim being qualified in front of the jury and opined that such action would prejudice the defense because it could reveal the trial court's opinion on the child's credibility. After assuring Wright that it would only determine the child's competency to testify, the trial court overruled Wright's objection. After establishing that the child knew the difference between the truth and a lie, and securing a promise from the child that she would tell the truth, the trial court simply instructed the State that it could proceed with direct examination. No further comment was made in front of the jury.

On appeal, Wright mistakenly states that "the jury heard the trial judge say the witness knows the difference between a truth and a lie." The record establishes otherwise; the trial court made no such comment. Without pointing to any statement made by the trial court, Wright also argues that the court commented on the weight of the evidence. Again, the trial court made no

5

statement with respect to the child's credibility. Our review of the record reveals this point to be meritless.[2]

Wright also argues that the trial court erred in qualifying the witness in front of the jury. However, "there is no literal requirement in the Rules of Evidence that the competency hearing of a child be conducted outside the presence of the jury." *Greeno v. State*, 46 S.W.3d 409, 414 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (also finding that "[a] statement by a trial court that a witness is competent to testify does not fall within one of the improper categories of comments on the weight of the evidence") (citing *Reyna v. State*, 797 S.W.2d 189, 192 (Tex. App.—Corpus Christi 1990, no pet.)).

We overrule Wright's second point of error.

## III. Neither Abuse of Discretion Nor Harm Is Shown In Overruling Wright's Objections that the State Was Leading Witnesses

"Leading questions are questions that suggest the desired answer." *Tinlin v. State*, 983 S.W.2d 65, 70 (Tex. App.—Fort Worth 1998, pet. ref'd). In his last point of error, Wright argues that the trial court erred in permitting the State to lead witnesses (Officer Cole Ogden and forensic examiner Melanie Halbrook) during direct examination. Wright's appeal references the following excerpts, among others:

TO OGDEN:

Q     [BY THE STATE]  All right.  And did you have an opportunity to speak to them?

---

[2]In the same point of error, Wright also argues that the trial court failed to conduct a Rule 403 balancing test before qualifying the witness, that the evidence was irrelevant, and that qualifying the witness invaded the province of the jury. These issues were not preserved, and we will not address them. *See* TEX. R. APP. P. 33.1(a)(1).

A    Yes, I spoke with the parents.

. . . .

Q    All right.  In speaking with the parents, did they provide information to you --?

[BY THE DEFENSE]:  Objection, leading.

THE COURT:  This is preliminary.  I'm going to allow that.  Overruled.

. . . .

Q    [BY THE STATE] Officer Ogden, I'm showing you what's been marked as State's Exhibit 1 and ask you, is this a photograph of the mobile home, the home of Randal Wright?

A    Yes, sir.

[BY THE DEFENSE]:  Objection, leading.

[BY THE STATE]:  I'm asking him to identify the photograph.

THE COURT:  Overruled.

. . . .

Q    And you didn't have a role as to whether this bedding was tested or whether there was additional evidence that was tested that went to the DNA lab?

[BY THE DEFENSE]:  Objection, leading.

[BY THE STATE]:  I'm clarifying the Defense's question, Judge.

THE COURT:  Overruled as asked.

. . . .

Q    [BY THE STATE] When the child is providing information, do you repeat information that she provides you?

[BY THE DEFENSE]:  Objection, leading.

THE COURT:  Overruled as asked.  You may answer.

. . . .

Q      All right.  And when you conducted the interview of the child Samantha Smith, did she provide you detailed information as to what occurred?

[BY THE DEFENSE]:  Objection, leading.

THE COURT:  Since this is preliminary, I'm going to allow it.

. . . .

TO HALBROOK:

Q      Can you explain to the jury, Ms. Halbrook, how a perpetrator who is the father of the victim's friend would have that relationship where he could gain the trust of the child?

[BY THE DEFENSE]:  Objection, leading.

[BY THE STATE]:  I'm asking her to explain --.

THE COURT:  This is preliminary.  We're going to allow this as preliminary.[3]

---

[3]Wright also complained of the following excerpts:

Q      [BY THE STATE]  All right.  And was there a particular mobile home that Randal Wright was living in?

[BY THE DEFENSE]:  Objection, leading.

[BY THE STATE]:  I'll rephrase it, Judge.

THE COURT:  Rephrase the question.  Sustained.

. . . .

Q      [BY THE STATE]:  And when you hear the child provide information, do you make sure that you understand it and ask for clarification if necessary?

[BY THE DEFENSE]:  Objection, leading.

8

Rule 611(c) of the Texas Rules of Evidence states that leading questions should not be used on direct examination "except as necessary to develop the witness's testimony." TEX. R. EVID. 611(c). This Rule does not forbid the asking of leading questions. *See Wyatt v. State*, 23 S.W.3d 18, 28 (Tex. Crim. App. 2000) (interpreting practically identical prior version of Rule 611(c)). Instead, "permitting leading questions on direct examination is a matter within the sound discretion of the trial court." *Id.* "Abuse of discretion cannot be shown 'unless [appellant] can show that he was unduly prejudiced by virtue of such questions." *Id.* (quoting *Hernandez v. State*, 643 S.W.2d 397, 400 (Tex. Crim. App. 1982); *see also Navajar v. State*, 496 S.W.2d 61, 64 (Tex. Crim. App. 1973), *overruled on other grounds by Rutledge v. State*, 749 S.W.2d 50 (Tex. Crim. App. 1988); *Ortega v. State*, 493 S.W.2d 828, 831 (Tex. Crim. App. 1973)).

Here, even if some of the State's questions were leading, Wright has neither established an abuse of discretion on the part of the trial court nor demonstrated that any harm occurred as a result of the trial court's decision to overrule his objections. Accordingly, we overrule Wright's last point of error.

---

[BY THE STATE]: I'll rephrase it, Judge.

THE COURT: Repeat the question. Sustained.

. . . .

Q    [BY THE STATE] And because the child knew who her perpetrator was, would she have that stranger danger that a kid would have with someone that they've never seen before?

[BY THE DEFENSE]: Objection, leading and speculative.

THE COURT: Sustained. Rephrase the question.

To preserve error, an objection must be "pursued to an adverse ruling." *Geuder*, 115 S.W.3d at 13. Because the trial court sustained Wright's objections, there is no adverse ruling from which Wright can complain.

## IV. Conclusion

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted: December 27, 2017
Date Decided: December 28, 2017

Do Not Publish